**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| LFC CAPITAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: |
| | ) | |
| v. | ) | |
| | ) | |
| RENAISSANCE HEALTHCARE SYSTEMS, | ) | |
| INC., HOUSTON COMMUNITY HOSPITAL, | ) | |
| INC., RENAISSANCE HOSPITAL HOUSTON, | ) | |
| INC., RENAISSANCE HOSPITAL DALLAS, | ) | |
| INC., RENAISSANCE HOSPITAL, INC., | ) | |
| RENAISSANCE HOSPITAL GROVES, INC., and | ) | |
| RENAISSANCE SURGICAL CENTERS, INC. | ) | |
| | ) | |
| Defendants. | ) | |

Case No.:
```
FILED: JULY 15, 2008
08CV3992
JUDGE COAR
MAGISTRATE JUDGE NOLAN
TG
```

## COMPLAINT

LFC CAPITAL, INC. ("LFC"), by Borst & Collins, LLC., its attorneys, and for its

Complaint against RENAISSANCE HEALTHCARE SYSTEMS, INC. ("RENAISSANCE

HEALTHCARE"), HOUSTON COMMUNITY HOSPITAL, INC. ("HOUSTON COMMUNITY"),

RENAISSANCE HOSPITAL HOUSTON, INC. ("RENAISSANCE HOUSTON"), RENAISSANCE

HOSPITAL DALLAS, INC. ("RENAISSANCE DALLAS"),RENAISSANCE HOSPITAL, INC.

("RENAISSANCE HOSPITAL") RENAISSANCE HOSPITAL GROVES, INC. ("RENAISSANCE

GROVES"), and RENAISSANCE SURGICAL CENTERS ("RENAISSANCE SURGICAL")

(collectively, "Defendants" or "Lessees") states as follows:

## PARTIES

1.     LFC is a Delaware Corporation that maintains its principal place of business at 303

E. Wacker Drive, Chicago, Illinois 60601.

2.     RENAISSANCE HEALTHCARE, HOUSTON COMMUNITY, RENAISSANCE

HOUSTON, RENAISSANCE DALLAS, RENAISSANCE HOSPITAL, RENAISSANCE GROVES, and RENAISSANCE SURGICAL, are all Texas Corporations that maintain their principal place of business at 2929 South Hampton Road, Dallas, Texas 75225.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a)(1) because the amount in controversy exceeds $75,000.00 exclusive of interests and costs and the parties are citizens of different states.

4.     Venue before this Court is appropriate pursuant to 28 U.S.C.§1391(a)(3) because a substantial part of the relevant events occurred in this district and Defendants are subject to personal jurisdiction in this district pursuant to the express terms of the Master Lease Agreement out of which this litigation arises.

## BACKGROUND

5.     On April 16, 2006 LFC and the Lessees entered into Master Lease Agreement Number 02202006 (the "Master Lease Agreement") for the lease of equipment by LFC to the Lessees that would be more particularly described in Equipment Schedules executed in connection with the Master Lease Agreement.  A true and correct copy of the Master Lease Agreement is attached hereto as Exhibit A.

6.     Subsequently, on or about April 20, 2006 LFC and Lessees RENAISSANCE HEALTHCARE, RENAISSANCE HOUSTON, RENAISSANCE DALLAS, and RENAISSANCE HOSPITAL (the, "Schedule 001 Lessees") executed Equipment Schedule Number 001 to the Master Lease Agreement for the lease of equipment more particularly described in Schedule A thereto.  A

true and correct copy of Equipment Schedule Number 001 is attached hereto as Exhibit B.

7.      Under Equipment Schedule Number 001, the Schedule 001 Lessees agreed to pay LFC sixty (60) consecutive monthly rental payments in the amount of $39,073.10 each.

8.      On or about March 6, 2006, LFC and Lessees RENAISSANCE HEALTHCARE, RENAISSANCE GROVES, and RENAISSANCE SURGICAL (the "Schedule 002 Lessees") executed Equipment Schedule Number 002 for the lease of equipment more particularly described therein. A true and correct copy of Equipment Schedule Number 002 is attached hereto as Exhibit C.

9.      Under Equipment Schedule Number 002, the Schedule 002 Lessees agreed to pay LFC sixty (60) consecutive monthly lease payments in the amount of $4,348.14 each.

10.     On or about April 16, 2006 LFC and Lessees RENAISSANCE HEALTHCARE, HOUSTON COMMUNITY, RENAISSANCE HOUSTON, RENAISSANCE DALLAS, and RENAISSANCE HOSPITAL (the, "Schedule 004 Lessees") executed Equipment Schedule Number 004 for the lease of equipment more particularly described in Schedule A thereto. A true and correct copy of Equipment Schedule Number 004 is attached hereto as Exhibit D.

11.     Under Equipment Schedule Number 004, the Schedule 004 Lessees agreed to pay LFC sixty (60) consecutive monthly lease payments of $6,600.00 each.

12.     On or about June 8, 2006 LFC, and Lessess RENAISSANCE HEALTHCARE, HOUSTON COMMUNITY, RENAISSANCE HOUSTON, RENAISSANCE DALLAS, and RENAISSANCE HOSPITAL (the "Schedule 005 Lessees") executed Equipment Schedule Number 005 for the lease of equipment more particularly described in Schedule A thereto. A true and correct copy of Equipment Schedule Number 005 is attached hereto as Exhibit E.

13.    Under Equipment Schedule Number 005, the Schedule 005 Lessees to pay LFC sixty (60) consecutive lease payments of $1,698.56 each.

14.    On or about September 22, 2006 LFC and Lessees RENAISSANCE HEALTHCARE, HOUSTON COMMUNITY, RENAISSANCE HOUSTON, RENAISSANCE DALLAS, and RENAISSANCE HOSPITAL (the "Schedule 006 Lessees") executed Equipment Schedule Number 006 for the lease of equipment more particularly described in Schedule A thereto. A true and correct copy of Equipment Schedule Number 006 is attached hereto as Exhibit F.

15.    Under Equipment Schedule Number 006, the Schedule 006 Lessees agreed to pay LFC sixty (60) consecutive lease payments of $25,350.00 each.

16.    The Master Lease Agreement provides: "It shall be a default ("Default") hereunder if Lessee or any Obligor...: (a) fails to pay any Rent or any amounts payable under a Schedule or hereunder and such failure or default shall have continued for 10 days after notice." See Master Lease Agreement attached hereto as Exhibit A, Paragraph 12.

17.    The Schedule 001, Schedule 002, Schedule 004, Schedule 005 and Schedule 006 Lessees have defaulted under the terms of the Master Lease Agreement and respective Equipment Schedules by failing to make the payments due on June 1, 2008, and further failed to make those payments within 10 days after receiving notice of the default as required by the Master Lease Agreement and related Schedules.

18.    The Master Lease Agreement further provides in relevant part as follows:

13.    **Remedies.**
    (a)    Upon Default Lessor may at any time and at Lessor's sole discretion exercise one or more of the following options, with or without terminating this Agreement;

-4-

(i)    Require the Lessee to return any and all Equipment as provided in section 15; ...

(iii)    Without further notice, take possession of Equipment ("Repossession") and for such purpose Lessee hereby grants Lessor the right to enter the premises at the Equipment location for the purpose of Repossession and waives claims for any damages, whether to property or otherwise, rising out of a Repossession; ...

(vi)    Declare the entire balance of rent for the full term for any and all Schedules covered hereby immediately due and payable and to similarly accelerate the balances under any other leases or agreements between Lessor and Lessee without notice or demand, and (a) recover all rents and all other monies due and become due under any or all Schedules hereunder plus (b) the residual value of the Equipment covered thereby, each discounted to the rate of default at a per annum rate of interest equal to the Schedule was executed by Lessee (the "Discount Rate", which discount rate Lessee agrees is a commercially reasonable rate which takes into account the facts and circumstances at the time each schedules commenced);...

(d)    Lessor will pay Lessor interest at a rate of 1-1/2% percent per month or the highest rate permitted by applicable law on all sums not paid by Lessee to Lessor when due and owing under the provisions of any Schedule or hereunder...

(e)    Lessee will be liable for all legal fees and other costs and expenses incurred by Lessor resulting from any default and/or exercise of Lessor's remedies.

See Master Lease Agreement attached hereto as Exhibit A, Paragraph 13

19.    The Master Lease Agreement further entitles LFC to recover a later charge of five percent (5%) on any monthly payment that is overdue. See Master Lease Agreement, Paragraph 3.

20.    LFC has performed all of its obligations under the Master Lease Agreement and Equipment Schedules 001, 002, 004, 005, and 006 thereto.

**COUNT I**

-5-

## DECLARATORY JUDGMENT PURSUANT TO
## 28 U.S.C. §2201 AND §2202 AND FED.R.CIV.P.57

21.    LFC realleges and reasserts Paragraphs 1 through 20 of its Complaint as though fully set forth herein as Paragraph 21 of Count I of its Complaint.

22.    As a result of the Lessees failure to make the payments due on June 1, 2008 and within a ten (10) day period after notice, the Lessees are in default under the terms of the Master Lease and the Equipment Schedules thereto.

23.    Each of the Equipment Schedules provides that the respective Lessees have the option to purchase the equipment leased under each Schedule at the end of the Initial Term for a nominal purchase price of $1.00.

24.    The Master Lease provides that in the event of a Default, LFC may exercise the following option: "If the end of term option is other than fair market value, [LFC may] convert the end of term option to fair market value." See Master Lease Agreement attached hereto as Exhibit A, Paragraph 13(a)(ii).

25.    A case of actual controversy exists between LFC and the Lessees.

26.    By virtue of the Lessees' default under the Master Lease Agreement and related Schedules, LFC became entitled to convert all of the nominal purchase options under Equipment Schedules 001, 002, 004, 005 and 006 to fair market value purchase options, and by letter dated June 19, 2008 to the Lessees from its counsel exercised that right. A true and correct copy of that letter is attached hereto as Exhibit G.

27.    As a result of LFC's exercising its option to convert the end of term purchase options to fair market value purchase options, LFC is also entitled to a declaration that the Lessees are no

longer entitled to purchase the equipment under the various Equipment Schedules for the nominal purchase price of $1.00.

WHEREFORE, LFC CAPITAL, INC. respectfully requests that this Court enter an Order declaring that LFC was entitled to convert the nominal purchase options under Equipment Schedules 001, 002, 004, 005 and 006 to fair market value purchase option and that by virtue of the fact that LFC exercised its option to do so by letter dated June 19, 2008, the Lessees are no longer entitled purchase the equipment under the Equipment Schedules for the nominal price of $1.00.

## COUNT II
## BREACH OF CONTRACT AGAINST SCHEDULE 001 LESSEES

28.    LFC  realleges and reasserts Paragraphs 1 through 27 of its Complaint as though fully set forth herein as Paragraph 28 of Count II of its Complaint

29.    As a result of the Schedule 001 Lessees' default, LFC is entitled to recover all past due payments, as well as all payments that shall become due under the Equipment Schedule 001.

30.    As of the date of the filing of this Complaint, the total of all payments remaining to be paid under Equipment Schedule 001 is $1,094,046.80.

31.    In addition, pursuant to Paragraph 13 of the Master Lease Agreement, the Schedule 001 Lessees are liable to LFC for all late fees, interest, legal fees and other costs and expenses that LFC incurs in its exercise of its remedies under the Master Lease Agreement.

WHEREFORE, LFC CAPITAL, INC. respectfully requests that this Court enter judgment in its favor and against RENAISSANCE HEALTHCARE SYSTEMS, INC., RENAISSANCE HOSPITAL HOUSTON, INC., RENAISSANCE HOSPITAL DALLAS, INC., and RENAISSANCE HOSPITAL, INC., jointly and severally as follows:

a.    Awarding LFC damages in the amount of $1,094,046.80 together with late fees, and interest thereon at the highest rate permitted by law from the date of default until paid in full;

b.    Awarding LFC its attorneys' fees and costs incurred and enforcing its rights and remedies under the Master Lease Agreement and Equipment Schedule 001; and

c.    Awarding LFC such other and further relief as this Court deems just.

## COUNT III
## BREACH OF CONTRACT AGAINST SCHEDULE 002 LESSEES

32.    LFC realleges and reasserts Paragraphs 1 through 31 of its Complaint as though fully set forth herein as Paragraph 32 of Count III of its Complaint

33.    As result of the Schedule 002 Lessees' default, LFC is entitled to recover all past due payments, as well as all payments that shall become due under the Equipment Schedule 002.

33.    As of the date of the filing of this Complaint, the total current past due payments under Equipment Schedule 002 is $4,348.14 and the remainder of all payments remaining to be paid under Equipment Schedule 002 is $130,440.20, for a total of $134,788.34.

34.    As of June 1, 2008, the total of late fees assessed under Equipment Schedule 002 is $217.41.

35.    In addition, pursuant to Paragraph 13 of the Master Lease Agreement, the Schedule 002 Lessees are liable to LFC for all interest, legal fees and other costs and expenses that LFC incurs in its exercise of its remedies under the Master Lease Agreement.

WHEREFORE, LFC CAPITAL, INC. respectfully requests that this Court enter judgment in its favor and against RENAISSANCE HEALTHCARE SYSTEMS, INC., RENAISSANCE HOSPITAL GROVES, INC. and RENAISSANCE SURGICAL CENTERS, jointly and severally

-8-

as follows:

    a.    Awarding LFC damages in the amount of $134,788.34 together with interest thereon at the highest rate permitted by law from the date of default until paid in full, and late fees of $217.41;

    b.    Awarding LFC its attorneys' fees and costs incurred and enforcing its rights and remedies under the Master Lease Agreement and Equipment Schedule 002; and

    c.    Awarding LFC such other and further relief as this Court deems just.

## COUNT IV
## BREACH OF CONTRACT AGAINST SCHEDULE 004 LESSEES

36.    LFC realleges and reasserts Paragraphs 1 through 35 of its Complaint as though fully set forth herein as Paragraph 36 of Count IV of its Complaint

37.    As a result of the Schedule 004 Lessees' default, LFC is entitled to recover all past due payments, as well as all payments that shall become due under the Equipment Schedule 004.

38.    As of the date of the filing of this Complaint, the total current past due payments under Equipment Schedule 004 is $6,600.00 and the remainder of all payments remaining to be paid under Equipment Schedule 004 is $217,800.00, for a total of $224,400.00.

39.    As of June 1, 2008, the total of late fees assessed under Equipment Schedule 004 is $330.00.

40.    In addition, pursuant to Paragraph 13 of the Master Lease Agreement, the Schedule 004 Lessees are liable to LFC for all interest, legal fees and other costs and expenses that LFC incurs in its exercise of its remedies under the Master Lease Agreement.

WHEREFORE, LFC CAPITAL, INC. respectfully requests that this Court enter judgment in its favor and against RENAISSANCE HEALTHCARE SYSTEMS, INC., HOUSTON COMMUNITY HOSPITAL, INC., RENAISSANCE HOSPITAL HOUSTON, INC.,

RENAISSANCE HOSPITAL DALLAS, INC., and RENAISSANCE HOSPITAL, INC., jointly and severally as follows:

    a.    Awarding LFC damages in the amount of $224,400.00 together with interest thereon at the highest rate permitted by law from the date of default until paid in full, and late fees of $330.00;

    b.    Awarding LFC its attorneys' fees and costs incurred and enforcing its rights and remedies under the Master Lease Agreement and Equipment Schedule 004; and

    c.    Awarding LFC such other and further relief as this Court deems just.

## COUNT V
## BREACH OF CONTRACT AGAINST SCHEDULE 005 LESSEES

41.    LFC realleges and reasserts Paragraphs 1 through 40 of its Complaint as though fully set forth herein as Paragraph 41 of Count V of its Complaint

42.    As a result of the Schedule 005 Lessees' default, LFC is entitled to recover all past due payments, as well as all payments that shall become due under the Equipment Schedule 005.

43.    As of the date of the filing of this Complaint, the total current past due payments under Equipment Schedule 005 is $1,698.56 and the remainder of all payments remaining to be paid under Equipment Schedule 005 is $59,449.60, for a total of $61,148.16.

44.    As of June 1, 2008, the total of late fees assessed under Equipment Schedule 005 is $84.93.

45.    In addition, pursuant to Paragraph 13 of the Master Lease Agreement, the Schedule 005 Lessees are liable to LFC for all interest, legal fees and other costs and expenses that LFC incurs in its exercise of its remedies under the Master Lease Agreement.

WHEREFORE, LFC CAPITAL, INC. respectfully requests that this Court enter judgment

in its favor and against RENAISSANCE HEALTHCARE SYSTEMS, INC., HOUSTON COMMUNITY HOSPITAL, INC., RENAISSANCE HOSPITAL HOUSTON, INC., RENAISSANCE HOSPITAL DALLAS, INC., and RENAISSANCE HOSPITAL, INC., jointly and severally as follows:

    a.    Awarding LFC damages in the amount of $61,148.16 together with interest thereon at the highest rate permitted by law from the date of default until paid in full, and late fees of $84.93;

    b.    Awarding LFC its attorneys' fees and costs incurred and enforcing its rights and remedies under the Master Lease Agreement and Equipment Schedule 005; and

    c.    Awarding LFC such other and further relief as this Court deems just.

## COUNT VI
### BREACH OF CONTRACT AGAINST SCHEDULE 006 LESSEES

46.    LFC realleges and reasserts Paragraphs 1 through 45 of its Complaint as though fully set forth herein as Paragraph 46 of Count VI of its Complaint

47.    As a result of the Schedule 006 Lessees' default, LFC is entitled to recover all past due payments, as well as all payments that shall become due under the Equipment Schedule 006.

48.    As of the date of the filing of this Complaint, the total current past due payments under Equipment Schedule 006 are $25,350.00 and the remainder of all payments remaining to be paid under Equipment Schedule 005 is $963,330.00, for a total of $988,680.00.

49.    As of June 1, 2008, the total of late fees assessed under Equipment Schedule 006 is $1,267.50.

50.    In addition, pursuant to Paragraph 13 of the Master Lease Agreement, the Schedule 006 Lessees are liable to LFC for all interest, legal fees and other costs and expenses that LFC incurs

in its exercise of its remedies under the Master Lease Agreement.

WHEREFORE, LFC CAPITAL, INC. respectfully requests that this Court enter judgment in its favor and against RENAISSANCE HEALTHCARE SYSTEMS, INC., HOUSTON COMMUNITY HOSPITAL, INC., RENAISSANCE HOSPITAL HOUSTON, INC., RENAISSANCE HOSPITAL DALLAS, INC., and RENAISSANCE HOSPITAL, INC., jointly and severally as follows:

    a.    Awarding LFC damages in the amount of $988,680.00 together with interest thereon at the highest rate permitted by law from the date of default until paid in full, and late fees of $1,267.50;

    b.    Awarding LFC its attorneys' fees and costs incurred and enforcing its rights and remedies under the Master Lease Agreement and Equipment Schedule 006; and

    c.    Awarding LFC such other and further relief as this Court deems just.

## COUNT VII
## POSSESSION OF EQUIPMENT AGAINST ALL LESSEES

51.    LFC realleges and reasserts Paragraphs 1 through 50 of its Complaint as though fully set forth herein as Paragraph 51 of Count VII of its Complaint.

52.    By virtue of the Lessees default under the Master Lease Agreement and various Schedules, LFC is also entitled to take possession of the equipment leased under the Equipment Schedules. See Master Lease Agreement, Paragraph 13.

WHEREFORE, LFC CAPITAL, INC. respectfully requests that this Court enter judgment in its favor and against RENAISSANCE HEALTHCARE SYSTEMS, INC., HOUSTON COMMUNITY HOSPITAL, INC., RENAISSANCE HOSPITAL HOUSTON, INC., RENAISSANCE HOSPITAL DALLAS, INC., RENAISSANCE HOSPITAL, INC.,

RENAISSANCE HOSPITAL GROVES, INC. and RENAISSANCE SURGICAL CENTERS jointly and severally as follows:

    a.    Directing the respective Lessees to turn possession of the Equipment leased under Equipment Schedules 001, 002, 004, 005 and 006 over to LFC within 15 days of the date of this Court's order, or to pay to LFC the reasonable value of any such equipment;

    b.    Awarding LFC its attorneys' fees and costs incurred and enforcing its rights and remedies under the Master Lease and related Schedules; and

    c.    Awarding LFC such other and further relief as this Court deems just.

LFC CAPITAL, INC.

By:    s/Vincent T. Borst

One of Its Attorneys

Vincent T. Borst, Esq. (ARDC # 06192904)
Jennifer E. Gaylord, Esq. (ARDC # 6284809)
Borst & Collins, LLC
Two Prudential Plaza
180 N. Stetson St., Ste. 3050
Chicago, Illinois 60601
Attorneys for Plaintiff
312/819-1944
312/819-1977 (f)
U:\KClark\LFC Capital\Renaissance Healthcare\Pleadings\Complaint - 1621.12687.wpd

# LFC CAPITAL

LFC CAPITAL, INC.
303 EAST WACKER DRIVE
CHICAGO ILLINOIS 60601
TEL 312.226.6000  FAX 312.946.8155
("Lessor")

## Master Lease Agreement
### .No. 02202006

Lessee

Renaissance Healthcare Systems Inc., Houston Community Hospital Inc., Renaissance Hospital
Houston, Inc., Renaissance Hospital Dallas Inc., Renaissance Hospital, Inc.

Address

2929 South Hampton Road, Dallas, TX 75224

This Master Lease Agreement ("Agreement"), including the terms and conditions on the reverse side hereof and any Schedule hereto, sets forth the entire Agreement between LFC Capital, Inc. located in Chicago, IL ("Lessor") and Lessee. No agreement or understanding shall be binding on either of the parties hereto unless in writing and executed by the parties hereto.

1. **Lease.** Lessor hereby leases to Lessee and Lessee hereby leases from Lessor the personal property (the "Equipment") described in the Lease Schedule(s) (the "Schedule") executed and to be executed by the parties hereto. Each Schedule shall constitute a separate lease of Equipment and the provisions hereof will be deemed to be a part thereof. This Agreement and all Schedules hereunder are non-cancellable.

2. **Performance by Lessor.** Lessor is not obligated to perform under this Agreement unless the following take place before the expiration of credit approval (i) Lessor receives from Lessee a fully signed and completed Agreement, Schedule and other documents as Lessor may require, (ii) Lessor receives a Certificate of Equipment Acceptance evidencing that the Equipment has been delivered to and irrevocably accepted by Lessee for lease and/or use from Lessor, (iii) Lessor receives from vendor of the Equipment, or from Lessee, clear and unencumbered title to each and every piece of Equipment, and (iv) there is no Default under Section 12. If Lessor has accepted a Purchase Agreement Assignment but the Lease does not commence within 30 days following such acceptance, Lessor may reassign such assignment to Lessee without recourse or warranty and Lessee will reimburse Lessor for all expense incurred, plus interest at the Overdue Rate in Section 13(d). For each Schedule, Lessee irrevocably authorizes Lessor to adjust, at Lessor's sole discretion, the Estimated Actual Equipment Cost and/or the Rent by no more than ten percent (10%) to account for the actual out of pocket costs to Lessor associated with change orders or returns, invoicing errors, quotation errors, quotation corrections, taxes, insurance, transportation charges, maintenance and similar matters. Pursuant to the above, Lessee agrees to any resulting adjustments in the transaction's terms.

3. **Term and Rental Payments.** The term of the lease for any Equipment ("Initial Lease Term"), its commencement date ("Lease Commencement Date"), and the amount of the rental payments ("Rent"), together with the sales tax thereon, if applicable, and the payment thereof, will be as provided in the Schedule related to such Equipment and as set forth in this Agreement. The Lease Commencement Date of the Lease shall be the earlier of either: (1) the date of delivery to Lessee of the Equipment to be leased thereunder; or (2) in the case of Equipment which is the subject of a sale and leaseback between Lessor and Lessee, the date upon which Lessor purchases such Equipment from Lessor. The Initial Lease Term shall start on the first day of the month (or other applicable Payment Period) following the Lease Commencement Date and shall continue for the term stated in the Schedule. Rent shall be due on the first day of each Payment Period (as stated in the Schedule), in advance. Rent paid in advance, if any, shall be applied to the first Rent due and then to the final Rents, in reverse order, or, at Lessor's option, to payment of any overdue obligation of Lessee. If the Lease Commencement Date is other than the first Date in other than the first day of the month (or other applicable Payment Period), then Lessee shall pay to Lessor, in addition to other sums due hereunder, an amount equal to one-thirtieth of the amount of average monthly rental payment due or to become due multiplied by the number of days from the Lease Commencement Date to the start date of the Initial Lease Term. Lease Payments or any other payments due hereunder not made by their schedule due date shall be overdue and shall be subject to a service charge in an amount equal to five percent (5%) per month or the maximum permitted by law whichever is less (the "Service Charge Rate") applied to all of the overdue payments from the date due until paid. Lessor's acceptance of a lease payment after it shall become due, shall not constitute or be construed as a waiver of any or all of Lessor's rights hereunder. If any Lease Payment becomes past due by more than sixty (60) days from its originally scheduled due date then Lessee agrees that Lessor may, with or without recognizing or acknowledging the existence of an Event of Default, rescind or cancel any end of term option to purchase the Equipment or renew this Lease granted by Lessor under this Lease upon ten (10) days prior written notice to Lessee. Upon issuance of such notice the applicable end of term option shall be deemed rescinded or cancelled unless Lessee remits all past due Lease Payments to Lessor prior to the expiration of such ten (10) day period.

4. **Payment Obligation.** All Rents and other payments due and payable under each Schedule shall be made to Lessor in immediately available U. S. funds to the Lessor as specified above, or at such other address as Lessor may designate from time to time. Rent shall be due and payable whether or not Lessee has received any notice that such Rent is due. **EACH SCHEDULE SHALL BE A NET LEASE, AND LESSEE'S OBLIGATION TO PAY ALL RENTS AND OTHER ITEMS WHEN DUE AND TO OTHERWISE PERFORM AS REQUIRED UNDER THE SCHEDULE SHALL BE ABSOLUTE AND UNCONDITIONAL, AND SHALL NOT BE SUBJECT TO ANY ABATEMENT, REDUCTION, SET-OFF, DEFENSE, COUNTERCLAIM, INTERRUPTION, DEFERMENT OR RECOUPMENT, FOR ANY REASON WHATSOEVER, WHETHER ARISING OUT OF SUCH LEASE, LESSOR'S STRICT LIABILITY OR NEGLIGENCE, FROM THE CONDUCT OF A THIRD PARTY, OR OTHERWISE.** If any Equipment is unsatisfactory for any reason, Lessee shall make any claim solely against the manufacturer or supplier of such Equipment and shall, nevertheless, pay Lessor or its assignee all amounts due and payable under the Schedule. Likewise, Lessee agrees states and affirms that Lessor is not the manufacturer, supplier, manufacturer's agent, or supplier's agent

5. **Other Obligations.** All taxes, assessments, licenses, and other charges (including without limitation personal property taxes and sales taxes, use taxes, leasing taxes and all other taxes based on gross receipts) and penalties and interest on such taxes permitted to be imposed, levied or assessed on the ownership, possession rental or use of the Equipment after delivery of the Equipment to Lessee and thereafter during the term of this Lease and any Schedule hereto (except for Lessor's federal or state net income taxes) shall be paid by Lessee when due and before the same shall become delinquent, whether such taxes are assessed or would ordinarily be assessed against Lessor or Lessee. Unless otherwise agreed, Lessee shall file all personal property or ad valorem tax reports or returns required for itself or Lessee with respect to the Equipment. Until such time as the Equipment is returned and delivered to and accepted by Lessor at the expiration of this Lease, pursuant to Lessor for such taxes as originally permitted to be assessed by the relevant taxing jurisdiction, plus an administrative fee not to exceed ten percent (10%) of the taxes paid. In case of failure by Lessee to pay said taxes, assessments, licenses or other charges, Lessor may pay all or any part of such items, in which event the amount so paid by Lessor including any interest or penalties thereon and reasonable attorneys' fees incurred by Lessor in pursuing its rights against Lessee or defending against any claims or defenses asserted by or through Lessee shall be immediately paid by Lessee to Lessor as additional rent hereunder.

6. **Use; Location.** Lessee will cause Equipment to be possessed and operated in accordance with any applicable manufacturer's manuals or instructions, by competent duly qualified personnel, in accordance with applicable governmental laws and regulations, if any, and for business purposes only, and in accordance with any applicable terms of insurance. Lessee agrees not to remove Equipment from the location as set forth in the related Schedule without Lessor's prior written consent, which consent will not be unreasonably withheld. In the event of a relocation of the Equipment or any item thereof to which Lessor consents, all actual costs (including any additional property taxes or other taxes and any additional expense of insurance coverage) resulting from any such relocation, shall be promptly paid by Lessee upon presentation to Lessee of evidence supporting such cost. Lessor shall have the right during normal business hours upon reasonable notice to Lessee, subject to applicable laws and regulations, to enter Lessee's Premises in order to inspect, observe, affix labels or other markings, or to exhibit the Equipment to prospective purchasers or future lessees thereof, or to otherwise protect Lessor's interest therein.

7. **Risk of Loss; Maintenance; Uninsured Loss and Damage.** Lessee assumes all risk of loss or damage to Equipment until its return to Lessor. Lessee, at its own expense, shall maintain the Equipment in good operating condition, repair and appearance in accordance with all Seller's and manufacturer's specifications and in compliance with all laws and regulations applicable to the Equipment, Lessee and its business, and shall protect the Equipment from deterioration except for reasonable wear and tear resulting only from proper use thereof. When generally offered, Lessee shall, at its own expense, keep a maintenance contract in full force and effect, throughout the term of this Lease, unless otherwise agreed in writing. Lessee will not and will not permit anyone other than the authorized field engineering representatives of Seller or other maintenance organization reasonably acceptable to Lessor to affect any inspection, adjustment, preventative or remedial maintenance or repair to the Equipment. Until such time as the Equipment is returned and delivered to and accepted by Lessor at the expiration of this Lease, pursuant to the terms of this Lease, Lessee hereby assumes and shall bear the entire risk of loss, damage, theft and destruction of the Equipment, or any portion thereof, from any cause whatsoever ("Equipment Loss"). Without limitation of the foregoing, no Equipment Loss shall relieve Lessee to any way from its obligations hereunder. Lessee shall promptly notify Lessor in writing of any Equipment Loss. In the event of any such Equipment Loss, Lessee shall: (a) in the event Lessor determines such Equipment to be repairable, promptly place, at Lessee's expense, the Equipment



**EXHIBIT A**

D Master Lease 220526

in good repair, condition and working order in accordance with Seller's specifications and to the satisfaction of Lessor; or (b) in the event of an actual or constructive total loss of any item of Equipment, at Lessor's option: (i) promptly replace, at Lessee's expense, the Equipment with like equipment of the same or a later model with the same Add-on Items as the Equipment, and in good repair, condition and working order in accordance with the Seller's and manufacturer's specifications and to the satisfaction of Lessor, or (ii) immediately pay to Lessor the sum of (x) any accrued and unpaid rental or any amounts due with respect to such Equipment hereunder plus (y) if no Casualty Schedule has been made a part of the lease, an amount equal to the present value of the unpaid rentals and all other amounts due and to become due with respect to the Equipment under any applicable Schedule during the term thereof as of the date of any payment, discounted at a rate equal to the discount rate of the Federal Reserve Bank of Chicago on the lease Commencement Date of the Lease, plus an additional amount equal to the estimated fair market value of the applicable Equipment at the end of the Initial Lease Term (the "End of Term Value") or the actual amount of the purchase option price specified in the applicable Schedule. If a Casualty Schedule has been made part of the lease, then in lieu of the amounts specified in subparagraphs (b)(ii)(x) and (y) Lessee shall pay Lessee the amounts obtained by multiplying the actual Equipment Cost as specified in the applicable Casualty Schedule thereof by the percentage contained in any applicable Casualty Schedule for the date of such Equipment Loss. In the event Lessee is required to repair or replace any such item of Equipment pursuant to Subsections (a) or (b) (i) of the preceding sentence, the insurance proceeds received by Lessor, if any, after the use of such funds to pay any unpaid amounts then due hereunder, shall be paid to Lessee or, if applicable to a third party repairing or replacing the Equipment upon Lessee's furnishing proof reasonably satisfactory to Lessor that such repair or replacement has been completed in a reasonably satisfactory manner. In the event Lessee elects option (b)(ii), Lessee shall be entitled to a credit against payment required by said Subsection in an amount equal to such insurance proceeds actually received by Lessor pursuant to Section 9 or Lessee to such of such Equipment and, upon payment by Lessee to Lessor of all of the sums required pursuant to Subsection (b)(ii), the applicable Schedule shall terminate with respect to such item of Equipment and Lessee shall be entitled to whatever interest Lessor may have in such item AS IS, WHERE IS and WITH ALL FAULTS in its condition and location without warranties and any type whatsoever, express or implied

8    Alterations.    Lessee shall, at its expense, make such alterations to Equipment during the Lease Term as may be required by applicable legal and regulatory requirements. Lessee may make alterations, additions or improvements to Equipment provided such alterations, additions or improvements shall not materially decrease the value of Equipment or impair its utility. Any alteration, addition or improvement shall be at Lessee's expense and shall belong to and become the property of Lessor, subject to the terms of this Lease during the Lease Term of the related Equipment. Lessee may remove any such alteration, addition or improvement at the expiration of the Lease Term of such Equipment, provided Lessee shall repair any damage to Equipment or the premises where located resulting from or occasioned by such removal and provided any such removal shall not render Equipment incapable of use or operation for the purposes for which such Equipment was intended.

9.    Insurance.    As and from the earlier of the date upon which Lessor pays any part of the cost of Equipment, or acquires ownership of or Lessee's right to use Equipment, or assumes risk, responsibility or liability therefor and thereafter until all of Lessee's obligations under the related Schedule have been performed in full, Lessee shall at its sole expense:

(a)    insure Equipment against "all risks" of physical loss or damage, including without limitation loss by fire (including extended coverage), theft, collision and such other risks of loss as are customarily covered by insurance on the type of Equipment leased hereunder by prudent operators of businesses similar to that in which Lessee is engaged, in such amounts, in such form and with such insurers as shall be satisfactory to Lessor, but in no event shall such insurance be less than the full replacement value of Equipment; and

(b)    maintain public liability and property damage insurance in respect of the use, operation and possession of Equipment and the ownership thereof by Lessor with insurers satisfactory to Lessor in such form and with such limits of liability as Lessor may from time to time reasonably require.

Lessee hereby appoints Lessor as Lessee's attorney in fact to make all claims, receive all payments, and execute and endorse all documents, checks, or drafts, for loss or damage under any insurance policies related to this Agreement. Likewise, Lessee hereby appoints Lessor as Lessee's attorney in fact to procure, or otherwise obtain or purchase, at Lessor's sole discretion, any and all insurance required by Lessor to be maintained, procured, or otherwise purchased by Lessee under this Agreement. Nothing contained herein reduces or diminishes Lessee's responsibilities to maintain, procure and purchase insurance. Any and all costs incurred by Lessor in maintaining, procuring or otherwise purchasing insurance hereunder shall be borne by Lessee and shall be immediately paid by Lessee.

Each insurance policy will name Lessor (and if Lessor requests at any time, any successor, assignee or secured party of Lessor) as loss payee for physical damage insurance and as additional insured for liability insurance, and shall contain a clause requiring the insurer to give Lessor at least 30 days' prior written notice of any alteration in the terms of such policy or of the cancellation thereof. At Lessor's request, Lessee shall furnish to Lessor a certificate or certificates of insurance or other evidence satisfactory to Lessor that such coverage is in effect, provided, however, that Lessor shall be under no duty to either ascertain the existence of or to examine such insurance policy or to advise Lessee of the terms of such insurance coverage shall not comply with the requirements hereof. Lessee will promptly notify Lessor of the occurrence of an event of loss and, at Lessee's expense, make all proofs of loss and take all other steps necessary to recover insurance benefits unless advised in writing by Lessor that Lessor desires so to do at Lessee's expense. Proceeds of insurance shall at the option of Lessor be disbursed by Lessor against satisfactory invoices for repair or replacement of Equipment, provided this Lease is not then in default, or be retained by Lessor for application against Lessee's obligations hereunder, and if the proceeds received are less than the present value of Equipment lost, as determined pursuant to Section 7, Lessee shall pay to Lessor the amount of such deficiency. The total or partial loss of Equipment or its use or possession shall not relieve Lessee from its obligations and liabilities hereunder.

10    Representations, Warranties and Covenants of Lessee.    Lessee represents, warrants and covenants to Lessor, that:

(a)    Lessee is a corporation duly incorporated and validly existing in good standing under the laws of the jurisdiction of its incorporation, and has the corporate power to enter into this Agreement, each Schedule and all certificates and other documents required hereby or referred to herein;

(b)    this Agreement and each Schedule has been duly authorized by all necessary corporate action on the part of Lessee, has been duly executed and delivered on its behalf by its proper officers duly authorized in that regard, and constitutes the legal, valid and binding agreement of Lessee, enforceable against it in accordance with its terms (subject to applicable bankruptcy and other similar laws);

(c)    the execution, delivery, observance and performance of this Agreement and each Schedule do not and will not result in the breach of, constitute a default under, contravene any provision of, or result in the creation of any lien on or in any property or assets of Lessee pursuant to any of Lessee's outstanding shares or debt instruments or any agreement, indenture or other instrument to which Lessee is a party or by which Lessee or any of its property or assets may be bound or affected;

(d)    there is no action, suit or proceeding pending or, to the knowledge of Lessee, threatened in any court or tribunal or before any competent authority against Lessee or any of its property or assets which, in the reasonable and bona fide opinion of Lessee, may have a material adverse effect on the financial condition or business of Lessee; and

(e)    the financial statements of Lessee (and any guarantors of Lessee's performance under this lease and any schedule hereto) are prepared in accordance with generally accepted accounting principles. Lessee shall supply Lessor with interim financial statements of Lessee as Lessor may reasonably require during the entire term of this Lease and any Schedule hereto. Either independent certified public accountants or the Lessee's chief financial officer as requested by Lessor shall certify all such annual financial statements. Lessee shall also supply Lessor with other financial and operating performance data as is provided to  its outside investors or commercial lenders and, if applicable, required to be provided to shareholders by the Security Exchange Commission. .

(f)    Lessee hereby covenants and agrees that Lessor or its assigns shall be paid any amount due and owing to Lessor or its assigns (including, without limitation, any monthly payment of Rent) before each Lessee make any Distribution (as such term is defined below) to its shareholders and/or members ("Owners"). "Distribution" shall mean any payment, promise, obligation, credit, or undertaking made by each Lessee to or on behalf of, or incurred in favor or on behalf of, an Owner or Owner's affiliate (if Owner is corporation), or Owner's spouse or other relative (if Owner is an individual), and includes but is not limited to the following: salaries, benefits, bonuses, withholding taxes, payroll taxes, contributions to savings, retirement or compensation plans or schemes, fees (including but not limited to management, consulting or directors fees), dividends, distributions of profits, moneys lent and advanced by an Owner to each Lessee or the payments of interest or any other fee or amount related to such loan, amounts paid to an Owner in consideration of any membership, Partnership, of any kind of such Owner in each Lessor, or in consideration of any asset sold or leased or otherwise furnished to each Lessee by an Owner, or in consideration of any return of capital, any amounts donated by Owner to each Lessee, and includes the value of any equity interest, asset, suretyship, guarantee, obligation, or any other right or undertaking, given in kind by each Lessee to or on behalf of an Owner. Each Lessee agrees to furnish Lessor, within five (5) business days of Lessor's written request with a full accounting and disclosure of Distributions made from time to time by each Lessee to each Owner within the Commencement Date of the applicable Equipment Schedule to the Master Lease, supported by such financial statements, accounting records, bank statements, and other information as may reasonably be required by Lessor to verify the aggregate amount of Distributions made to each Owner. Each Lessee agrees that if an Event of Default has occurred under any Equipment Schedule to the Master Lease and remains uncured, or if any amount owing by the Co-Lessees under any Equipment Schedule to the Master Lease is overdue and unpaid then each Lessee will not make, and Owner will neither receive, accept or obtain the benefit of any Distribution and any previously made Distribution since the Commencement Date of the Lease will be subject to repayment.

11.    Warranties and Exclusion of Warranties.    Until such time as a Default shall have occurred hereunder, Lessor assigns to Lessee the benefit of any manufacturers' warranties or guarantees. LESSEE ACKNOWLEDGES THAT LESSOR DID NOT SELECT, MANUFACTURE OR SUPPLY EQUIPMENT. LESSEE FURTHER ACKNOWLEDGES THAT LESSOR LEASES EQUIPMENT AS-IS AND MAKES NO WARRANTY, EXPRESS OR IMPLIED, CONCERNING EQUIPMENT, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE OR OF MERCHANTABILITY. LESSEE HEREBY WAIVES ANY CLAIM (INCLUDING ANY CLAIM BASED ON STRICT OR ABSOLUTE LIABILITY IN TORT) IT MIGHT HAVE AGAINST LESSOR FOR ANY LOSS, DAMAGE (INCLUDING INCIDENTAL OR CONSEQUENTIAL DAMAGE) OR EXPENSE CAUSED BY EQUIPMENT. LESSEE ACKNOWLEDGES THAT IT HAS MADE THE SELECTION OF EQUIPMENT BASED UPON ITS OWN

2

JUDGMENT AND EXPRESSLY DISCLAIMS ANY RELIANCE ON STATEMENTS MADE BY LESSOR OR ITS AGENTS. LESSEE FURTHER AGREES THAT THIS LEASE AGREEMENT SHALL BE DEEMED TO BE, WHETHER OR NOT TERMS HEREOF WOULD OTHERWISE BE SUBJECT THERETO, A FINANCE LEASE AS DEFINED IN THE UNIFORM COMMERCIAL CODE. (See Chapter 810 Illinois Compiled Statutes Annotated, Article 2A). Lessee hereby releases and forever discharges Lessor from any and all actions, claims, demands, costs, expenses, set-offs, abatements and compensation whatsoever, in connection with the foregoing. Upon Lessee's execution of a Schedule, Lessor shall be deemed to have fully performed and discharged all its obligations hereunder with respect to the related Equipment by providing Lessee with a possessory interest therein. Lessee will not bring a claim or suit against or make settlement with the manufacturer or seller as to any matter or issue arising out of equipment which is referenced in this Agreement or any Schedule thereto, without Lessor's consent; and said Lessor's consent may not be unreasonably withheld.

12. **Default.** It shall be a default hereunder ("Default") if Lessee or any Obligor ("Obligor" shall include any guarantor or surety of any obligation of Lessee to Lessor under this Lease and any Schedule hereto):

    (a)    fails to pay any Rent or other amounts payable under a Schedule or hereunder and such failure shall have continued for 10 days;

    (b)    fails or defaults in the due performance of any other obligation or provision of a Schedule or hereunder and such failure or default shall have continued for 10 days after notice from Lessor;

    (c)    shall suffer or have suffered, in the reasonable judgment of Lessor, a material adverse change in its financial condition since the date of the last financial statements submitted to Lessor, and as a result, Lessor in good faith deems itself to be insecure.

    (d)    becomes insolvent or bankrupt, admits in writing its inability to pay its debts as they mature, or makes an assignment for the benefit of creditors; or Lessee applies for or consents to the appointment of any receiver, trustee or similar officer for it or for all or any substantial part of its property; or such receiver, trustee or similar officer is appointed without the consent of Lessee; or Lessee institutes any bankruptcy, insolvency, reorganization, moratorium, arrangement, readjustment of debt, dissolution, liquidation or similar proceeding relating to it under the laws of any jurisdiction, or any such proceeding is instituted against Lessee and is not dismissed within 30 days; or any judgment, writ, warrant or attachment or execution of similar process is issued or levied against a substantial part of Lessee's property and remains unsatisfied for 30 days;

    (e)    has misrepresented any representation, warranty or covenant made by Lessee to Lessor in connection with entering into this Agreement, any Schedule or any document or agreement in connection herewith, or any such representation, warranty or covenant is untrue or incorrect;

    (f)    dissolves or otherwise terminates its corporate existence, or consolidates with or merges with or into any entity, or sells, leases or otherwise transfers all or substantially all of its assets or stock to any entity, or incurs a substantial amount of indebtedness other than in the ordinary course of its business, or engages in a leveraged buy-out or any other form of corporate reorganization, UNLESS in each case and before the event in question, either (i) Lessor confirms in writing that in its good faith opinion Lessee's financial condition and credit standing will not be impaired by the event, or (ii) Lessee's obligations under each Schedule are assumed or guaranteed in a manner reasonably satisfactory to Lessor by an entity having in Lessor's good faith opinion at least as good financial condition and credit standing as those of Lessee immediately before the event;

    (g)    does or permits to occur any act which may in the reasonable opinion of Lessor materially lessen the value of Equipment or Lessor's interest therein or increase the risk thereto; or

    (h)    is in default under any other lease, contract, agreement or obligation now existing or hereinafter entered into with Lessor or any assignee of Lessor whether Lessee is bound alone or with others.

13. **Remedies.**

    (a)    Upon Default Lessor may at any time and at Lessor's sole discretion exercise one or more of the following options, with or without terminating this Agreement:

        (i)    require Lessee to return any and all Equipment as provided in Section 15;

        (ii)    if the end of term option is other than fair market value, convert the end of term option to fair market value;

        (iii)    without further notice, take possession of Equipment ("Repossession") and for such purpose Lessee hereby grants Lessor the right to enter the premises at the Equipment location for the purpose of Repossession and waives claims for any damages, whether to property or otherwise, arising out of a Repossession;

        (iv)    terminate this Lease Agreement and any Schedule; however, a termination hereunder shall occur only upon notice by Lessor and only as to such units of equipment as Lessor specifically elects to terminate, and any such termination shall not reduce or diminish any of Lessee's rights and remedies or any of Lessee's payment obligations;

        (v)    without terminating or being deemed to have terminated this Lease Agreement or any Schedule, as agent and attorney for Lessee sell or lease Equipment upon such terms as Lessor deems advisable ("Disposition");

        (vi)    declare the entire balance of rent for the full term of any and all Schedules covered hereby immediately due and payable and to similarly accelerate the balances under any other leases or agreements between Lessor and Lessee without notice or demand, and (a) recover all rents, and other monies due and to become due under any or all Schedules hereunder plus (b) the residual value of the Equipment covered thereby, each discounted to the date of default at a per annum rate of interest equal to the Federal Reserve Discount Rate in effect on the date when the applicable Schedule was executed by Lessee (the "Discount Rate", which discount rate Lessee agrees is a commercially reasonable rate which takes into account the facts and circumstances at the time each schedule is commenced);

        (vii)    require Lessee, at its own expense, to immediately assemble, crate, insure and deliver all of the Equipment and all of the service records and all software (including software documentation) in the same good condition as when received, reasonable wear and tear resulting only form proper use thereof excepted, to such reasonable destination within the continental United States as Lessor shall designate;

        (viii)    Proceed by appropriate court action to enforce performance by Lessee of the applicable covenants of this Agreement or any Schedule and declare immediately payable all sums due and to become due hereunder for the full term of any and all Schedules to this Agreement;

        (ix)    Take possession (by summary proceedings or otherwise) of the Equipment without prejudice to any other remedy or claim referred to herein;

        (x)    Exercise any other right or remedy which may be available to it under the Uniform Commercial Code or any other applicable law;

    (b)    Lessor may accelerate all payments or performance or require collateral or additional collateral at will when Lessor in good faith believes that the prospect of payment or performance is impaired.

    (c)    Lessee waives, to the maximum extent allowed by law, any and all rights of any kind or nature whatsoever to possession after Default and to claims of loss based on repossession by Lessor or the exercise by Lessor of any of Lessor's remedies.

    (d)    Lessee will pay Lessor interest at a rate equal to the lesser of 1-1/2% per month or the highest rate permitted by applicable law on all sums not paid by Lessee to Lessor when due and owing under the provisions of any Schedule or hereunder (the "Overdue Rate"). Such interest shall be due and payable monthly on the same days as provided for the payment of Rent so long as payment of any monies due and payable hereunder is in arrears.

    (e)    Lessee will be liable for all legal fees and other costs and expenses incurred by Lessor resulting from any default and/or exercise of Lessor's remedies.

    (f)    To the extent permitted by applicable law Lessee hereby waives any rights now or later conferred by statute or otherwise which modify Lessor's rights and remedies under this Agreement.

    (g)    It is agreed that the provisions of this paragraph represent an agreed measure of damages and are not to be deemed a forfeiture or penalty.

    (h)    No failure on the part of Lessor to exercise and no delay in exercising any rights or remedies shall operate as a waiver thereof or modify the terms of this Agreement. A waiver of default by Lessor on any one occasion shall not be deemed a waiver of any other or subsequent default.

    (i)    In the event this Master Lease Agreement or any Schedule thereto is determined to be a security agreement, Lessor's recovery shall in no event exceed the maximum permitted by law..

All rights of Lessor are cumulative and not alternative and may be exercised by Lessor separately or together, in any order or combination.

14. **Ownership; Personal Property; Labels.** Title to the Equipment is and shall remain in Lessor. During the Lease Term, Equipment shall be and remain movable, personal and chattel property and Lessee agrees to take all action necessary or reasonably requested by Lessor to ensure that Equipment shall be and remain personal property. Lessor shall not interfere with Lessee's right to possession and quiet enjoyment of Equipment during the Lease Term provided Lessee performs its obligations hereunder and any Schedule pursuant to the terms and conditions hereunder and thereunder. Lessor may require plates, labels, or other markings to be affixed to or placed prominently upon Equipment indicating Lessor as the owner. To the extent this Agreement is determined to constitute a lease intended as security, Lessee grants a Lessor a security interest in the Equipment and all replacements, substitutions, and accessories thereto as well as all proceeds thereof. Lessee shall, at its expense and upon Lessor's demand, promptly execute, acknowledge, deliver any and all further documents and take any and all other actions reasonably requested by Lessor from time to time, for the purpose of fully effectuating the intent and purposes of each Schedule, and to protect the interests of Lessor, its successors and assigns. Lessor may file a copy of this Lease Agreement in lieu of a financing statement. In the event that Lessee fails or refuses to execute and/or file Uniform Commercial Code financing statements or other instruments or Recordings which Lessor or its assignee reasonably deems necessary to perfect or maintain perfection of Lessor's or its assignee's interests hereunder, Lessee hereby appoints Lessor as Lessee's Limited attorney-in-fact to execute and record all documents necessary to perfect or maintain perfection of Lessor's interests hereunder. Lessee shall pay Lessor for all costs or fees relating to any Filings hereunder including but not limited to actual out of pocket costs, fees, searches, documentation preparation, documentary stamps, taxes and reasonable attorneys' fees.

15. **Acceptance and Return of Equipment:** Lessor shall, at any time prior to unconditional acceptance of all Equipment by Lessee, have the right to cancel this Lease with respect to such Equipment (and if the Equipment or any portion thereof has not previously been delivered, Lessor may refuse to pay for the Equipment or any portion thereof or refuse to cause the same to be delivered) if:

3

(a) the Equipment Acceptance Date ("Acceptance Date") with respect to any item of Equipment to be leased pursuant to any Schedule has not occurred within sixty (60) days of the Estimated Acceptance Date set forth in such Schedule or (b) there shall be in the reasonable judgment of Lessor a material adverse change in the financial condition or credit standing of Lessee or of any guarantor of Lessee's performance under this Lease since the date of the most recent financial statements of Lessee or of such guarantor submitted to Lessor. Upon any cancellation by Lessor pursuant to this Section or the provisions of any Schedule, Lessee shall forthwith reimburse to Lessor all sums paid by Lessor with respect to such Equipment plus all costs and expenses of Lessor incurred in connection with such Equipment and any interest or rentals due hereunder in connection with such equipment and shall pay to Lessor all other sums then due hereunder, whereupon if Lessee is not then in default and has fully performed all of its obligations hereunder, Lessor will, upon request of Lessee, transfer to Lessee without warranty or recourse any rights that Lessor may then have with respect to such Equipment. Lessee agrees to promptly execute and deliver to Lessor within 15 days of the date of delivery to Lessee of Equipment to be leased hereunder; or (2) in the case of Equipment which is the subject of a sale and leaseback between Lessee and Lessor, the date upon which Lessor purchases such Equipment from Lessee, which ever is earliest, a confirmation by Lessee of unconditional acceptance of the Equipment in the form supplied by Lessee (the "Equipment Acceptance"). Lessee agrees before execution of the aforesaid Equipment Acceptance, to inform Lessor in writing of any defects in the Equipment or, in the installation thereof, which have come to the attention of Lessee or its agents which might give rise to a claim by Lessee against the Seller or any other person. If Lessee fails to give notice to Lessor of any such defects or fails to deliver to Lessor the Equipment Acceptance as provided herein, it shall be deemed an acknowledgement by Lessee (for purposes of that Schedule only) that no such defects in the Equipment or its installation exist and shall be conclusively presumed, solely as between Lessor and its assignees and Lessee, that such Equipment has been unconditionally accepted by Lessee for lease hereunder. Lessee shall provide Lessor a minimum of ninety (90) days and a maximum of one hundred and eighty (180) days prior written notice of its intention to return the Equipment upon Expiration of the Initial Lease Term. Upon expiration or cancellation or termination of the Lease with respect to any Equipment, Lessee shall, at its own expense, assemble, crate, insure, and deliver all of the Equipment and all of the service records and all software and software documentation subject to this Lease and any Schedule hereto to Lessor in the same good condition and repair as when received, reasonable wear and tear resulting only from proper use thereof excepted, to such reasonable destination within the Continental United States as Lessor shall designate. If such items are not returned within seven days of written notification by Lessor, then Lessor shall have the right to replace them at Lessee's cost. Lessee shall, immediately prior to such return of each item of Equipment, provide to Lessor a letter from the manufacturer of the equipment certifying that said item is in good working order, reasonable wear and tear resulting only from proper use thereof excepted, that such item is eligible for a maintenance agreement by such manufacturer and all software is included thereon. If any computer software requires relicensing when removed from Lessee's premises, Lessee shall bear all costs of such relicensing. If Lessee fails for any reason to provide the notice set forth above or re-deliver the Equipment back to Lessor in accordance with all the terms set forth above, Lessee shall pay to Lessor, an amount equal to the highest monthly payment set forth in the Schedule for a period not less than twelve (12) months from the end of the existing lease term, and at the end of such period of time, Lessee shall return the Equipment to Lessor as provided therein. If Lessee fails or refuses to return the Equipment as provided herein, Lessee shall pay to Lessor, at Lessor's option, an amount equal to one hundred percent (100%) of the highest monthly payment set forth in the Schedule or the highest rate permitted by law, whichever is less, for each month or portion thereof, until Lessee returns the Equipment to Lessor as provided herein.

16. **Indemnification.** Lessee shall be responsible for, and shall indemnify and save Lessor and its assignees harmless, and shall defend Lessor at Lessee's sole expense, from and against all losses, claims, costs, expenses, damages, actions, liabilities, personal injuries, including without limitation attorneys' fees, in connection with, and/or arising from, this Agreement and/or any Schedule, and/or Equipment, and/or the manufacture, acquisition, selection, delivery possession, ownership, use, maintenance, condition, return or operation of Equipment, provided that Lessee's indemnity obligation and duty to defend shall not extend to any loss caused solely by the gross negligence or willful misconduct of Lessor. Lessee shall give Lessor prompt notice of any occurrence, event or condition in connection with which Lessor may be entitled to indemnification hereunder. The Lessee indemnity obligation and duty to defend herein shall survive termination of this Agreement.

17. **Encumbrances.** Lessee shall, at Lessee's expense, keep Equipment free and clear of liens, security interests, attachments, seizures and encumbrances of any kind (except those arising hereunder or solely through the acts of Lessor).

18. **Remedying Defaults.** If Lessee shall fail to perform or comply with any of Lessee's obligations hereunder and/or under a Schedule, Lessor in its discretion may do all such reasonable acts and make all such reasonable disbursements as may be necessary to cure such Default and any disbursements so made shall be payable by Lessee on demand, together with interest at the Overdue Rate from the date of disbursement by Lessor to the date of payment by Lessee.

19. **Notices.** Notices with respect hereto will be given in writing personally delivered to an officer of the recipient party or by prepaid receipted delivery addressed to such party at its address set forth above or such other address as it may in writing direct. Notice shall be deemed effective upon dispatch.

20. **Assignments.**

(a)     This Agreement, including any Schedule, is not assignable by Lessee nor may Lessee assign or sublet Equipment without the consent of Lessor. Any attempted assignment or subletting without Lessor's consent shall be void and of no force and effect.

(b)     Lessor may at any time without notice to Lessee, but subject to the rights of Lessee hereunder, transfer or assign this Agreement or any Schedule or any Equipment or any Rent or other monies and benefits due or to become due hereunder.

Any Assignee of Lessor shall have all of the rights but none of the obligations of Lessor hereunder unless expressly agreed in writing, and Lessee agrees that it will not assert against any Assignee any defense, counterclaim or offset that Lessee may have against Lessor. Lessee shall have no greater obligations to any Assignee than it had to Lessor at the time of assignment, and such assignment shall not limit or otherwise restrict the rights afforded Lessee hereunder. Lessee hereby (i) consents to such assignments and /or grants (ii) agrees to promptly deliver and execute such further acknowledgements, agreements, and other instruments as may be reasonably requested by Lessor or Assignee to effect such assignments and/or grants from time to time and (iii) agrees to comply fully with the terms of any such assignments and/or grants. Lessee acknowledges that any Assignment or transfer by Lessor made in accordance with the provisions of this Section shall not materially change Lessee's duties or obligations under this Lease nor materially increase the burdens or risks imposed on Lessee. In the event of an assignment, all references herein to Lessor shall include Assignee.

21. **Survival.** All of the representations, warranties, covenants and agreements of Lessee contained in this Agreement and each Schedule and each Equipment Acceptance shall survive the expiration or earlier termination of such Schedule and the Lease Term of Equipment leased thereunder until all obligations of Lessee under the Schedule(s) and this Agreement have been performed in full.

22. **Governing Law; Jurisdiction; Waiver of Jury Trial. THIS AGREEMENT AND EACH SCHEDULE SHALL BE GOVERNED IN ALL RESPECTS BY, AND CONSTRUED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF ILLINOIS. LESSEE IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY FEDERAL OR STATE COURT LOCATED THEREIN, AND WAIVES TO THE FULLEST EXTENT ALLOWED BY LAW ANY OBJECTION TO VENUE IN SUCH COURT, AND FURTHER WAIVES ANY RIGHT TO A TRIAL BY JURY.**

23. **Miscellaneous.**

(a)     This Agreement shall be binding upon and inure to the benefit of Lessor and its successors and assigns and shall be binding upon Lessee and the heirs, executors, administrators, successors and permitted assigns and sublessees of Lessee.

(b)     No term, condition or provision of this Agreement will be waived or deemed to have been waived by Lessor except in writing.

(c)     If more than one person, firm or corporation executes this Agreement as Lessee, their respective liabilities hereunder will be both joint and several, but Lessor will be fully discharged in respect of any obligation hereunder upon performance of that obligation to any one of them.

(d)     Any term, condition or provision of this Agreement which is or is deemed to be void, prohibited or unenforceable in any jurisdiction is, as to such jurisdiction, severable therefrom and ineffective to the extent of such avoidance, prohibition or unenforceability, without invalidating the remaining terms, conditions and provisions hereof.

(e)     To the extent permitted by applicable law, Lessee waives any and all rights and remedies conferred upon Lessee under Uniform Commercial Code Sections 2A-303 and 2A-508 through 2A-522.

(f)     This "Lease Agreement", "Lease Agreement", "this Agreement", "this lease", "hereto", "herein", "hereof", "hereby", "hereunder" and similar expressions refer to this Master Lease Agreement and include all Schedules.

(g)     Lessee acknowledges receipt of a copy of this Agreement.

(h)     This Agreement and each Schedule may be executed in any number of counterparts, each of which, when so executed and delivered, shall be an original (except that to the extent, if any, this Agreement or any Schedule constitutes chattel paper, no security interest therein may be created except through the transfer or possession of the original counterpart, which shall be identified by Lessor), but all such counterparts taken together shall constitute one and the same instrument.

(i)     This Agreement and Schedules hereto constitute the entire agreement between Lessor and Lessee and may be amended only in writing signed by Lessor and Lessee. Thus, no oral agreement or warranty is binding on Lessor. By initialing this provision, Lessee agrees to be bound by the terms of this Agreement and, to the extent applicable, that the provision concerning a separately signed document pursuant to Uniform Commercial Code Section 2A-208 has been complied with.

4

Lessee:
Renaissance Healthcare Systems, Inc.

By: _____
Title: _____CEO_____
Date: _____4/10/06_____

Houston Community Hospital Inc.

By: _____
Title: _____
Date: _____4/10/06_____

Renaissance Hospital Houston, Inc.

By: _____
Title: _____CEO_____
Date: _____4/10/06_____

Lessee:
Renaissance Hospital Dallas, Inc.

By: _____
Title: _____CEO_____
Date: _____4/10/06_____

Lessee:
Renaissance Hospital, Inc.

By: _____
Title: _____CEO_____
Date: _____4/10/06_____

ACCEPTED AT CHICAGO, ILLINOIS
Lessor:
LFC Capital, Inc.

By: _____
Title: _____PRESIDENT & CEO____
Date: _____4/16/06_____

# LFC CAPITAL

LFC CAPITAL, INC.
303 EAST WACKER DRIVE
CHICAGO ILLINOIS 60601
TEL 312.228.6000  FAX 312.946.8155

## EQUIPMENT SCHEDULE

Lessee and Equipment Location:
See Schedule A attached hereto and made a part hereof.

Master Lease Agreement No. 02202006
Equipment Schedule Lease No. 001
Estimated Equipment Acceptance Date: 3/ 6/06

Lease Commencement Date and the start of the Initial Lease Term are defined in numbered paragraph 3 of the Master Lease Agreement.

Equipment Description:
One Siemens Sensation 64 slice CT Scanner , Serial No. 54646 and various medical equipment per Schedule A attached hereto and made a part hereof.
Supplier (including address)
Various per Schedule A

Estimate of Actual Equipment Cost: $1,732,731.60

( x ) ("X" if applicable) as more fully described on Schedule "A" attached hereto and made a part hereof.

TERM AND RENTAL:                                            Initial Lease Term:  60  months

Rental Payments to be made:  _x_ monthly; ___ quarterly;  other:

Security Deposit: $_na_____

Rental Payments:
$39,073.10 per rental payment for the first sixty rental payments

Rent Paid in Advance $117,219.29 to be applied to the first and last two rental payments under the Initial Lease Term. (Applied as set forth in paragraph 3 of the Master Lease Agreement).

End of Term:  At the end of the Initial Lease Term and provided that Lessee is not and has not been in default under the terms of the Master Lease Agreement and such default remains uncured then Lessee will purchase the Equipment for $1.00.

LFC Capital, Inc. (Lessor) hereby agrees to lease to the Lessee, and Lessee hereby agrees to lease and rent from Lessor the Equipment listed above, for the term and at the rental payments specified herein, all subject to the terms and conditions set forth herein and on the reverse side hereof and in the referenced Master Lease Agreement. Further, Lessee agrees and confirms that this Equipment Schedule is a finance lease as defined in Article 2A of the Uniform Commercial Code, subject to the terms of the Master Lease Agreement.

Lessee:
Renaissance Healthcare Systems Inc.

By: _____
Title: _CFO_____
Date: ____as of March 6, 2006 _____

ACCEPTED AT CHICAGO, ILLINOIS
Lessor:
LFC Capital, Inc.

By:_____
Title:_____
Date:_____

*See page 2 for additional signatures*



1

Lessee:
**Renaissance Hospital d/b/a Renaissancee Hospital Houston**

By: _____
Title: _____
Date: _____as of March 6, 2006_____


Lessee:
**Renaissance Hospital Dallas Inc.**

By: _____
Title: _____
Date: _____as of March 6, 2006_____


Lessee:
**Renaissance Hospital d/b/a Renaissance Hospital Groves**

By: _____
Title: _____
Date: _____as of March 6, 2006_____

2

Schedule A 002.xls

**SCHEDULE A TO MASTER LEASE NO.**
**022O2006, EQUIPMENT SCHEDULE 001**

| Schedule #1 | | | |
|---|---|---|---|
| | Advanced Technology Integration | Nurse Call System - Groves | 5500- 39th Street Groves, TX | 129,913.00 |
| | Stryker Instruments | Chest Saws for Heart procedures | 5500-39th Street Groves, TX | 35,851.60 |
| | Stryker Medical | Tables Overbed/mattress | 5500-39th Street Groves, TX | 97,425.50 |
| | Nihon Kohden | Sleep Apnea unit, Sleep single bed | 2929 S. Hampton Dallas, TX | 42,000.00 |
| | Siemens Medical Solutions | (2) XP Mobilett Systems - Dallas | 2929 S. Hampton Dallas, TX | 70,000.00 |
| | Siemens Medical Solutions | Sensation 64 | 2929 South Hampton Dallas, TX 75224 | 1,163,414.00 |
| | Edwards Life Science | Vigilance Monitoring System cable/module | 5500- 39th Street Groves, TX | 9,000.00 |
| | Drager Medical | Ventilator Evita for CCU | 5500-39th Street Groves, TX | 152,821.50 |
| | Haemscope | Hemo Analyzers | 2807 Little York Rd Houston, TX 77903 | 32,306.00 |
| | | | **Total** | **1,732,731.60** |

Renaissance Hospital d/b/a Renaissance Hospital Groves

By: _____

Title: CEO

Date: 4/26/06

Renaissance Holdings Systems Inc.

By: _____

Title: CEO

Date: 4/26/06

Renaissance Hospital    d/ba/
Renaissance Hospital Houston

By: _____

Title: CEO

Date: 4/26/06

Renaissance Hospital/Dallas Inc.

By: _____

Title: CEO

Date: 4/26/06

# LFC CAPITAL

LFC CAPITAL, INC.
303 EAST WACKER DRIVE
CHICAGO ILLINOIS 60601
TEL 312.228.6000  FAX 312.946.8155

### EQUIPMENT SCHEDULE

Lessee and Equipment Location:
See Schedule A attached hereto and made a part hereof.

Master Lease Agreement No. 02202006
Equipment Schedule Lease No. 002
Estimated Equipment Acceptance Date: ____

Lease Commencement Date and the start of the Initial Lease Term are defined in numbered paragraph 3 of the Master Lease Agreement.

---

Equipment Description:
Nurse Call System, Chest Saws by Styrker Instruments, Tables, Overbeds with mattresses by Stryker Medical, Sleep Apnea Units and two (2) XP Siemens Mobillett Systems per Schedule A attached hereto and made a part hereof.
Supplier (including address)
Various per Schedule A attached

Estimate of Actual Equipment Cost: ~~$375,190.10~~
$192,822.00

( x ) ("X" if applicable) as more fully described on Schedule "A" attached hereto and made a part hereof.

---

TERM AND RENTAL:                                   Initial Lease Term:  60  months

Rental Payments to be made:  _x_  monthly;  ___ quarterly;  other:

Security Deposit:  $ _na_

Rental Payments:
~~$8,408.01~~ per rental payment for the first sixty rental payments
$4,348.14

Rent Paid in Advance $25,224.03 to be applied to the first and last two rental payments under the Initial Lease Term. (Applied as set forth in paragraph 3 of the Master Lease Agreement).

End of Term:  At the end of the Initial Lease Term and provided that Lessee is not and has not been in default under the terms of the Master Lease Agreement and such default remains uncured then Lessee will purchase the Equipment for $1.00.

---

**LFC Capital, Inc.** (Lessor) hereby agrees to lease to the Lessee, and Lessee hereby agrees to lease and rent from Lessor the Equipment listed above, for the term and at the rental payments specified herein, all subject to the terms and conditions set forth herein and on the reverse side hereof and in the referenced Master Lease Agreement. Further, Lessee agrees and confirms that this Equipment Schedule is a finance lease as defined in Article 2A of the Uniform Commercial Code, subject to the terms of the Master Lease Agreement.

Lessee:
Renaissance Healthcare Systems Inc.

By: _____
Title: __C_P_O_____
Date: __3/6/06_____

ACCEPTED AT CHICAGO, ILLINOIS
Lessor:
LFC Capital, Inc.

By: _____
Title: __PRES + CEO_____
Date: __AS-OF  3/6/06_____

*See page 2 for additional signatures*



EXHIBIT

1

Lessee:

Lessee:
**Renaissance Hospital Groves Inc.**

By: _____
Title: _____
Date: _____

Lessee:
**Renaissance Surgical Centers Inc.**

By: _____
Title: _____
Date: _____

2

# LFC CAPITAL

LFC CAPITAL, INC.
303 EAST WACKER DRIVE
CHICAGO ILLINOIS 60601
TEL 312.228.6000  FAX 312.946.8155

## EQUIPMENT SCHEDULE

Lessee and Equipment Location:
See Schedule A attached hereto and made a part hereof.

Master Lease Agreement No. 02202006
Equipment Schedule Lease No. 004
Estimated Equipment Acceptance Date: _4/14/06_

Lease Commencement Date and the start of the Initial Lease Term are defined in numbered paragraph 3 of the Master Lease Agreement.

Equipment Description:
One Siemens All Digital Uroskop Access Endourology Table with 16" 1.1 Imaging System per Schedule A attached hereto and made a part hereof.
Supplier (including address)
Siemens Medical Systems

Estimate of Actual Equipment Cost: $287,733.00

( x ) ("X" if applicable) as more fully described on Schedule "A" attached hereto and made a part hereof.

TERM AND RENTAL:                                         Initial Lease Term:  60  months

Rental Payments to be made:  _x_ monthly;  ___ quarterly;  other:

Security Deposit: $ _na_

Rental Payments:
$6,600.00 per rental payment for the first sixty rental payments

Rent Paid in Advance $19,800.00 to be applied to the first and last two rental payments under the Initial Lease Term. (Applied as set forth in paragraph 3 of the Master Lease Agreement).

End of Term:  At the end of the Initial Lease Term and provided that Lessee is not and has not been in default under the terms of the Master Lease Agreement and such default remains uncured then Lessee will purchase the Equipment for $1.00.

**LFC Capital, Inc.** (Lessor) hereby agrees to lease to the Lessee, and Lessee hereby agrees to lease and rent from Lessor the Equipment listed above, for the term and at the rental payments specified herein, all subject to the terms and conditions set forth herein and on the reverse side hereof and in the referenced Master Lease Agreement. Further, Lessee agrees and confirms that this Equipment Schedule is a finance lease as defined in Article 2A of the Uniform Commercial Code, subject to the terms of the Master Lease Agreement.

Lessee:
Renaissance Healthcare Systems Inc.

By: _____
Title: _CFO_
Date: _4/14/06_

ACCEPTED AT CHICAGO, ILLINOIS
Lessor:
LFC Capital, Inc.

By: _____
Title: _Pres & CEO_
Date: _As of  4/14/06_

*See page 2 for additional signatures*



EXHIBIT
D

1

Lessee:
**Houston Community Hospital, Inc.**

By: _____
Title: CEO
Date: 4/16/06

Lessee:
**Renaissance Hospital Houston, Inc.**

By: _____
Title: CEO
Date: 4/16/06

Lessee:
**Renaissance Hospital Dallas, Inc.**

By: _____
Title: CEO
Date: 4/16/06

Lessee:
**Renaissance Hospital, Inc.**

By: _____
Title: CEO
Date: 4/16/06

Schedule A 003.xls

Page 1

**Schedule #4**    Siemens Medical Solutions

## SCHEDULE A TO MASTER LEASE
## 02202006, EQUIPMENT SCHEDULE 004
All Digital Uroskop Access
Endourology Table with 16" Imaging
System

5500 39th Street

Groves, TX

287,733.00

**Monthly Pmt**    6,600.00

# LFC CAPITAL

LFC CAPITAL, INC.
303 EAST WACKER DRIVE
CHICAGO ILLINOIS 60601
TEL 312.228.6000  FAX 312.946.8155

## EQUIPMENT SCHEDULE

Lessee and Equipment Location:
See Schedule A attached hereto and made a part hereof.

Master Lease Agreement No. 02202006
Equipment Schedule Lease No. 005
Estimated Equipment Acceptance Date: 4/8/06

Lease Commencement Date and the start of the Initial Lease Term are defined in numbered paragraph 3 of the Master Lease Agreement.

---

Equipment Description:
Stryker Equipment
Supplier (including address)
Stryker Medical

Estimate of Actual Equipment Cost: $75,977.28

( x ) ("X" if applicable) as more fully described on Schedule "A" attached hereto and made a part hereof.

---

TERM AND RENTAL:                                    Initial Lease Term:  60  months

Rental Payments to be made:   x  monthly;  ___ quarterly;  other:

Security Deposit: $  na

Rental Payments:
$1,698.56 per rental payment for the first sixty rental payments

Rent Paid in Advance $5,095.67 to be applied to the first and last two rental payments under the Initial Lease Term. (Applied as set forth in paragraph 3 of the Master Lease Agreement).

End of Term:  At the end of the Initial Lease Term and provided that Lessee is not and has not been in default under the terms of the Master Lease Agreement and such default remains uncured then Lessee will purchase the Equipment for $1.00.

---

LFC Capital, Inc. (Lessor) hereby agrees to lease to the Lessee, and Lessee hereby agrees to lease and rent from Lessor the Equipment listed above, for the term and at the rental payments specified herein, all subject to the terms and conditions set forth herein and on the reverse side hereof and in the referenced Master Lease Agreement. Further, Lessee agrees and confirms that this Equipment Schedule is a finance lease as defined in Article 2A of the Uniform Commercial Code, subject to the terms of the Master Lease Agreement.

Lessee:
Renaissance Healthcare Systems Inc.

By: _____
Title: CFO
Date: 5/1/06

ACCEPTED AT CHICAGO, ILLINOIS
Lessor:
LFC Capital, Inc.

By: _____
Title: Pres & CEO
Date: as of 4/8/06

*See page 2 for additional signatures*

EXHIBIT

1

Lessee:
**Houston Community Hospital, Inc.**

By: _____

Title: C E O _____

Date: 6/8/06 _____


Lessee:
**Renaissance Hospital Houston, Inc.**

By: _____

Title: C E O _____

Date: 6/8/06 _____


Lessee:
**Renaissance Hospital Dallas, Inc.**

By: _____

Title: C E O _____

Date: 6/8/06 _____


Lessee:
**Renaissance Hospital, Inc.**

By: _____

Title: C E O _____

Date: 6/8/06 _____

Pa                                                      Schedule A 003.xls

## SCHEDULE A TO MASTER
## 02202006, EQUIPMENT SILE 005

Sch t

| | | |
|---|---|---|
| 8 Beds | 5500 39th Street Groves, TX | 19,680.00 |
| 8 REM Flex Cover | | 1,696.00 |
| 8 Night Lites | | 432.00 |
| 8 Auto Contour | | 376.00 |
| 16 Legend 3 cabinet drawe | | 3,796.00 |
| 16 Table Overhead | | 3,588.00 |
| 12 Cribs Stretchers | | 46,409.28 |
| **Total Cost** | | **75,977.28** |

Lessee:
Renaissa
Dallas In

By:
Title:
Date:

Lessee:
Renaissa
Houston,

By:
Title:
Date:

Lessee
Renaissance Hospital, Inc.
By:
Title: CE
Date: 6/6/6

Renaissance Healthcare Systems In
By:
Title: CEO
Date: 6/6/6

Houston Community Hospital Inc.
By:
Title:
Date:

# LFC CAPITAL

LFC CAPITAL, INC.
303 EAST WACKER DRIVE
CHICAGO ILLINOIS 60601
TEL 312.228.6000  FAX 312.946.8155

### EQUIPMENT SCHEDULE

Lessee and Equipment Location:
See Schedule A attached hereto and made a part hereof.

Master Lease Agreement No. 02202006
Equipment Schedule Lease No. 006
Estimated Equipment Acceptance Date: _____

Lease Commencement Date and the start of the Initial Lease Term are defined in numbered paragraph 3 of the Master Lease Agreement.

---

Equipment Description:
Siemens Magnetom Symphony
Supplier (including address)
Siemens Medical Systems

Equipment Cost: $1,099,743.00

( x )("X" if applicable) as more fully described on Schedule "A" attached hereto and made a part hereof.

---

TERM AND RENTAL:

Initial Lease Term: _60_ months

Rental Payments to be made:  _x_ monthly;  ___ quarterly;  other:

Security Deposit: $_na_____

Rental Payments:
$25,350.00 per rental payment for the first sixty rental payments

Rent Paid in Advance $76,050.00 to be applied to the first and last two rental payments under the Initial Lease Term. (Applied as set forth in paragraph 3 of the Master Lease Agreement).

End of Term:  At the end of the Initial Lease Term and provided that Lessee is not and has not been in default under the terms of the Master Lease Agreement and such default remains uncured then Lessee will purchase the Equipment for $1.00.

---

**LFC Capital, Inc.** (Lessor) hereby agrees to lease to the Lessee, and Lessee hereby agrees to lease and rent from Lessor the Equipment listed above, for the term and at the rental payments specified herein, all subject to the terms and conditions set forth herein and on the reverse side hereof and in the referenced Master Lease Agreement.  Further, Lessee agrees and confirms that this Equipment Schedule is a finance lease as defined in Article 2A of the Uniform Commercial Code, subject to the terms of the Master Lease Agreement.

ACCEPTED AT CHICAGO, ILLINOIS

Lessee:
Renaissance Healthcare Systems Inc.

By: _Michael Sweeney_
Title: _CFO_
Date: _9/22/06_

Lessor:
LFC Capital, Inc.

By: _Martens_
Title: _Pres & CEO_
Date: _as of 9/22/06_

*See page 2 for additional signatures*


EXHIBIT

1

Lessee:
**Houston Community Hospital, Inc.**

By: _____
Title: _C F O_
Date: _8/23/06_

Lessee:
**Renaissance Hospital, Houston, Inc.**

By: _____
Title: _CFO_
Date: _9/22/06_

Lessee:
**Renaissance Hospital Dallas, Inc.**

By: _____
Title: _CFO_
Date: _9/23/06_

Lessee:
**Renaissance Hospital, Inc.**

By: _____
Title: _CFO_
Date: _9/22/06_

2

Schedule A 003.xls

Page 1

Schedule #6　Siemens Medical Systems

**SCHEDULE A TO MASTER LEASE**
**02202006. EQUIPMENT SCHEDULE 006**
One Siemens Magnetom Symphony　　427 W 20th Street
MRI　　Houston, TX 77008　　1,099,743.00
To include the following:
　Sprint gradients
　Medrad Injector
　Advanced Angio
　Advanced Turbo
　Care Bolus
　CP Body Coil

**Total Cost**　　1,099,743.00
**Monthly Payment**　　25,350.00

Lessee



**BORST & COLLINS, LLC**
A T T O R N E Y S   A T   L A W

180 N STETSON AVENUE
SUITE 3050
CHICAGO, IL 60601

P: 312 819 1944
F: 312 819 1977
www.borstcollins.com

June 19, 2008

**<u>Via Federal Express Overnight</u>**

Michael Smeszny
President and Chief Executive Officer
Renaissance Healthcare Systems, Inc.,
Houston Community Hospital, Inc.,
Renaissance Hospital Houston, Inc.,
Renaissance Hospital Dallas, Inc., and
Renaissance Hospital, Inc.
2929 South Hampton Road
Dallas, TX 75224

Re:    <u>LFC Capital, Inc. v. Renaissance Healthcare Systems, Inc., Houston Community</u>
<u>Hospital, Inc., Renaissance Hospital Houston, Inc.,Renaissance Hospital Dallas,</u>
<u>Inc., and Renaissance Hospital, Inc.</u>
Master Lease Agreement No.: 02202006 and Equipment Schedules 001, 002, 004,
005 and 006
Our File No.: 1621.12687

Dear Mr. Smeszny:

Borst & Collins, LLC and myself have been retained to represent LFC Capital, Inc. ("LFC") in this matter. Renaissance Healthcare Systems, Inc., Houston Community Hospital, Inc., Renaissance Hospital Houston, Inc., Renaissance Hospital Dallas, Inc. and Renaissance Hospital, Inc. (collectively the "Lessees") are in default under the above-referenced Master Lease Agreement and related Schedules (collectively the "Lease") as a result of their failure to make the monthly lease payments due on June 1, 2008 in the total amount of $37,996.70. In addition, $1,899.84 in late fees have accrued as a result of the Lessees' default. Lessees are also in default for failing to provide LFC with interim financial statements as provided in Paragraph 10(c) of the Lease, and because it is apparent that Lessees have suffered a material adverse change in their financial condition since LFC last received financial statements, as set forth in Paragraph 12(c) of the Lease.

As you know, each Schedule provided that the respective Lessees could purchase the relevant Equipment at the end of the Initial Lease Term for $1.00, provided that they were not in default under the terms of the Lease. As a result of the Lessees' defaults, LFC hereby exercises its right pursuant to Paragraph 13(a)(ii) to convert the end of term purchase options for each Schedule to a fair market value purchase option. The Lessees are no longer entitled to purchase the Equipment leased under the Lease for $1.00 under any circumstances.

EXHIBIT

Page 2
June 19, 2008
Michael Smeszny


        LFC demands that Lessees provide it with recent financial statements and information concerning their current corporate structure in accordance with Paragraph 10(c) of the Lease. In addition, in the event that the past due amount of $39,896.54 is not paid immediately, and LFC allowed to continue to auto debit all future payments, LFC will declare the entire balance of rent for the full term of the Lease to be immediately due and payable pursuant to Paragraph 13(a)(vi) of the Lease. That amount currently totals $2,504,937.74, excluding property taxes, and will continue to accrue late fees until such time as it is paid. LFC will also require the Lessees to return all of the Equipment pursuant to Paragraph 13(a)(I) of the Lease.

        We trust you agree it is in the Lessees' best interest to comply with this demand as quickly as possible.


                                Very Truly Yours,

                                BORST & COLLINS, LLC

                        By: _____
                                Vincent T. Borst, Esq.

VTB/knc
U:\KClark\LFC Capital\Renaissance Healthcare\Correspondence\Default Ltr - Renaisannce - 1621.12687.wpd